### SASSER v. UNITED STATES.
### No. 14448.

United States Court of Appeals,
Fifth Circuit.

Dec. 9, 1953.

L. Eugene McNatt, Atlanta, Ga. (Cuba, Cuba & McNatt, Atlanta, Ga., of counsel), for appellant.

J. Ellis Mundy, U. S. Atty., Herbert A. Ringel, Asst. U. S. Atty., James W. Dorsey, U. S. Atty., Atlanta, Ga., for appellee.

Before HUTCHESON, Chief Judge, and RUSSELL and RIVES, Circuit Judges.

RUSSELL, Circuit Judge.

John W. Sasser was convicted on four counts of an indictment which charged him with wilfully attempting to evade a large part of his federal income taxes for each of the years 1945, 1946, 1947 and 1948 by filing false and fraudulent income tax returns for those years in violation of § 145(b) of the Internal Revenue Code, 26 U.S.C.A. § 145(b). The Court imposed a fine of $2,000, suspended the imposition of a sentence of imprisonment

and placed the defendant on probation for a period of two years.

 The burden was upon the government to prove beyond a reasonable doubt that the returns filed by Sasser for each of the years contained in the indictment were false and fraudulent and that by the filing of such returns Sasser wilfully attempted to evade the payment of taxes lawfully due. The primary contention urged by Sasser upon this appeal is that the government did not meet this burden and that its evidence fails to prove either that there were understatements of income or a wilful attempt to evade payment of taxes.

The evidence on behalf of the government as to the claimed understatements of income is furnished largely by the testimony of two agents of the Bureau of Internal Revenue who participated in the investigation of Sasser's income tax returns. By their testimony, it was established that Sasser and his wife had no visible source of income during the taxable years other than the income derived from a grocery store and two liquor stores owned and operated by Sasser during portions of those years. There was evidence that Sasser received a small inheritance in 1947, and that his wife was the recipient of a few small gifts of cash during the taxable years which were not taken into account in determining the alleged understatements of income. These items, however, were insubstantial.

The taxpayer maintained no records for the years under review, except that he had in his possession bank statements showing deposits and withdrawals for the years 1947 and 1948. From these statements and the cancelled checks in Sasser's possession the agents attempted to reconstruct the taxpayer's income for those two years. This was done by adding the total deposits and subtracting from that sum redeposits and expenses paid by check. In making these computations all expenses claimed on the income tax returns were allowed, but those expenses which were not paid by check were concluded to have been paid by cash which represented undeposited receipts. Based upon this conclusion, which is certainly a reasonable one under the circumstances, the gross sales represented by the adjusted bank deposits were increased by the amount which the total expenses claimed and allowed exceeded the amount of such expenses paid by check. The final result thus obtained indicated that the taxpayer had understated his income by approximately $10,000 in 1947, and by approximately $4,500 in 1948.

 Inasmuch as there were no records available covering the years 1945 and 1946, the agents resorted to what is commonly referred to as the "net worth" or "increase in net worth" method to establish Sasser's income for those years. This method was also used to corroborate the understatements for the years 1947 and 1948 indicated by the computations based upon the bank statements and checks. The net worth method of reconstructing taxable income in cases where the taxpayer has no records from which his actual income may be computed is a hybrid method of determining income based upon the cost of assets owned by the taxpayer at the beginning and at the end of each taxable period. In cases where this method is used it is essential that the cost of all assets owned by the taxpayer at the beginning and at the end of the taxable year be established within a reasonable degree of certitude. By subtracting the cost of the assets owned at the beginning of the year from those owned at the close of the year and reducing the difference by the sum of the taxpayer's liabilities at the close of the year, his increase in net worth during the years may be established. Of course, in order to comput the taxable income for the year it is necessary to adjust this figure by adding to it personal expenditures and reducing this sum by any non-taxable, or only partially taxable, income.

In computing Sasser's increase in net worth the agents checked all available public and private records and, to use the language of one of the agents, "every-

thing that we could get our hands on that related to the case." They determined and so testified that his net worth as of January 1, 1945, was $42,262.42, which amount included, among other things, cash, bank deposits, Postal Savings, Government Bonds, accounts receivable, inventory, real estate and fixtures and equipment. With that figure and those assets as a starting point they testified as to the cost basis of all assets owned by Sasser as of December 31st of each succeeding year through December 31, 1948. The value of these assets, reduced by the amount of outstanding liabilities, showed that Sasser's net worth for each of the years was increased by an amount greatly in excess of the net income reported on his income tax returns.

During the course of the investigation, Sasser submitted to the agents, at their request, a statement showing his net worth for the years under review. This statement was offered in evidence. All of the items contained therein are in substantial agreement with those testified to by the agents, except for the cash on hand at the beginning and end of the years 1945 and 1946 and the inventory claimed to have been on hand as of January 1st, 1945. It is therefore evident that the primary difference between the evidence offered by the government and the taxpayer's contentions relative to his increase in net worth relates to the cash and inventory on hand as of January 1, 1945. On this crucial date, Sasser claimed to have had an estimated inventory of $20,526.81. However, the closing inventory for the year 1944 and the opening inventory for the year 1945, as reflected by Sasser's income tax returns for those years, was $2,640.-11, the figure accepted by the agents in determining Sasser's net worth. This figure is consistent with the inventory shown on Sasser's income tax return for the year ended December 31, 1943.

Sasser has consistently contended that he had large sums of undeposited cash secreted in his home and in a safe owned by his father prior to 1942. He stated that beginning in 1940 he commenced converting this cash into inventory and that in 1942 he had an inventory valued at approximately $32,000. During the course of the investigation he told conflicting stories to the agents regarding the amount of cash he had and where he kept it. He accounted for this large amount of cash by saying that he had saved it from his earnings, which were admittedly modest, over a period of years beginning in 1917. Notwithstanding the large amounts of cash which he claimed to have had on hand, during the years immediately prior to 1943 Sasser made purchases of equipment on the monthly installment plan and was required to pay interest on the balances due. Sasser told the agents that he had a considerable sum deposited in the First National Bank at Waycross, Georgia, on December 31, 1940, but that he had been told that the bank records covering his account for that year had been lost. On his net worth statement submitted to the agents he estimated this deposit to be $9,500. At the trial there was produced by the government records of the bank showing that on December 31, 1940, Sasser had only $578.51 credited to his account.

After telling the agents that he had no records concerning the large inventory he claimed to have had during the early 1940's, Sasser later produced six small index cards on which were listed items which he said were contained in the inventory. The agents testified that Sasser told them that the cards had been prepared in August, 1941, and were a record of the actual inventory he had on hand at that time. He further stated that the cards, which showed signs of age, had been shifted around and he had just found them. A witness for the government, testifying as an expert, testified that in his opinion the writing on the cards was of recent origin and that the cards had the appearance of having been deliberately soiled so as to cause them to look as though they were original records. Sasser denied that he told the agents that the cards had been prepared in 1941 and testified that he and his son

had prepared them from memory in 1949 and that he told this to the agents.

■ All of these facts were presented for consideration by the jury, as were Sasser's denials and explanations of them. The case was submitted to the jury under instructions which were not complained of. It was within the province of the jury, as triers of the facts, to believe the evidence offered by the government and to reject that offered by the defendant. It is not the purpose of this Court to re-try the facts. Our inquiry into them is limited to a determination of whether the admissible evidence was sufficient to overcome the objections raised by the defendant's motion for a judgment of acquittal and to sustain the verdict. We think that it was. Considering the evidence in the light most favorable to the government, as we must do upon this appeal, it is evident that Sasser understated his income for each of the years contained in the indictment by a substantial amount. It is true that these amounts can not be determined with exactness. However, in order to sustain the conviction, it is not necessary that the understatements be proved to the exact dollar. It is sufficient to show that substantial amounts of taxable income were unreported. United States v. Johnson, 319 U.S. 503, 517, 63 S.Ct. 1233, 87 L.Ed. 1546. Likewise was the question of whether these understatements were made wilfully with intent to evade payment of taxes a fact issue peculiarly within the province of the jury. In making this determination the jury could properly consider the amounts of the understatements, the number of years for which they were made, the equivocal statements made by the defendant to the agents, his attempts to conceal the understatements and the absence of records reflecting his income. Since in the final analysis each case must be decided upon its own facts, it would serve no useful purpose to cite and discuss the numerous cases dealing with this proposition. We think that under the facts of this case the jury was warranted in finding that Sasser did wilfully attempt to defeat and evade a large part of his income tax due for each of the years by filing false and fraudulent income tax returns.

■ Turning now to the contention that much of the evidence offered by the government was inadmissible for various reasons urged by the defendant, and that without such evidence the record does not support the verdict, we find it without merit. The only objections made to the testimony of the agents was that it was premature, that until the *corpus delicti* had been established such "expert testimony" was inadmissible. The further objection was made that one of the agents had "lured [Sasser] into taking certain actions that I say is a violation of his constitutional rights." These objections apparently related to a motion to suppress evidence filed before trial relative to "all clues" obtained from certain documents and extra-judicial admissions furnished by Sasser during the course of the investigation. The claim of violation of Sasser's constitutional rights urged at the trial and renewed here is clearly without foundation. The record shows without dispute that in furnishing all documents and information Sasser acted voluntarily. Neither does the record support the contention that proof of the understatements of income rests wholly upon extra-judicial admissions made by Sasser. The trial court properly overruled the motion to suppress the evidence and admitted the testimony over the objections urged. The government offered in evidence thirty items of documentary evidence most of which were received over the defendant's objections. It is now contended that the court erred in admitting in evidence fifteen of these exhibits. We shall not consider each of these items separately, but we conclude that they were admissible over the objections made at the time of the trial.

We have carefully considered all of the other points raised by the defendant, but no reversible error has been found. The judgment is affirmed.

Judgment affirmed.