WAYNE L. HARLAN AND TERRI A. HARLAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Harlan v. Commissioner
Docket Nos. 15698-91, 26605-91
United States Tax Court
T.C. Memo 1995-309; 1995 Tax Ct. Memo LEXIS 310; 70 T.C.M. (CCH) 48; July 13, 1995, Filed *310 Decision will be entered under Rule 155. Wayne L. Harlan and Terri A. Harlan, pro sese. For respondent: Carol K. Muranaka. JACOBS
JACOBS
MEMORANDUM OPINION JACOBS, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes, additions to tax, and penalty: Accuracy- Additions to Tax Related Penalty
Year
Deficiency
Sec. 6653(a)
Sec. 6661
Sec. 6662(a)
1986
$ 36,332
[1] $ 1,817
$ 8,946
--  1987
22,547
[2] 1,127
5,637
--  1988
50,916
2,546
12,729
--  1989
237,598
-- -- $ 47,520
All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions by respondent, the issues for decision are: (1) Whether petitioners had unreported income for 1986; (2) whether petitioners are entitled to deductions for Schedule C expenses (with respect to 1986, 1987, and 1989) and subchapter S losses (with respect to 1987 and 1988) in excess of the amounts allowed by respondent; and *311 (3) whether petitioners are liable for the additions to tax pursuant to sections 6653(a) and 6661 and the accuracy-related penalty pursuant to section 6662(a). Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Tucson, Arizona, at the time they filed their petitions. For ease of analysis, our findings of fact and opinion for each issue are combined, and each issue is discussed under a separate heading. Issue 1. Income
During the years in issue, petitioners were married and filed joint Federal income tax returns. Petitioners are presently divorced. Petitioner Wayne Harlan (Wayne) has taken approximately 2 years of college classes, including some in general accounting. Prior to 1986, he was a real estate agent. From 1986 through the present, he has been a real estate broker. From 1986 through 1989, Wayne was the sole shareholder of United American Realty, Inc. (United American), an Arizona real estate company organized as a subchapter S corporation. Petitioner Terri Harlan (Terri) is a high school graduate. At the beginning of 1986, Terri worked *312 as an electronics technician for Hamilton Test Systems. Later that year, she accepted a position as an electronics technician with IBM Corp. (IBM). She subsequently worked for IBM during each of the years in issue. On their 1986 Federal income tax return, petitioners reported $ 22,666 of wages, $ 536 of interest income, and $ 224 of taxable refunds of State and local income taxes. In addition, they reported $ 11,459 of gross income on Schedule C for Wayne's business of "real estate, insurance, sub contract acct." In the notice of deficiency, respondent determined that petitioners failed to report $ 67,738 of income for 1986. Respondent has since conceded that this amount contains a mathematical error, and that the notice of deficiency should have listed the amount of unreported income as $ 64,738. Respondent determined the unreported income by using the bank deposits method. A summary of petitioners' bank deposits for 1986 is as follows: Pima Savings & Loan Assn.
$ 32,086 Valley National Bank (#2001-0381)
35,073 Valley National Bank (#2414-7947)
30,840 Valley National Bank (#3213-5858
3,000 Less transfers
(1,375)
Total  99,624 Respondent now concedes that *313 the following amounts, which respondent characterized in the notice of deficiency as taxable deposits for 1986, are in fact nontaxable deposits for that year: An adjustment on 10/31/86 in the
Pima Savings acct.  $ 2,289
Transfer from H & H Associates
checking acct. to Pima Savings  4,917
Transfer from Pima Savings to
Terri Harlan's acct.  4,550
Total  11,756
Subtracting from total bank deposits of $ 99,624, petitioners' reported gross income of $ 34,885 ($ 22,666 + $ 224 + $ 536 + $ 11,459) and respondent's concessions of $ 11,756, yields unexplained bank deposits totaling $ 52,983 for 1986. Respondent contends that petitioners' taxable income for 1986 should be increased by $ 52,983 to reflect these unexplained bank deposits. Petitioners disagree with respondent's characterization. They contend that a substantial portion of these bank deposits is deposits made in connection with a fund-raising activity conducted by Wayne and a partner on behalf of the South Tucson Firefighters Association (which activity resulted in a loss to petitioners [1]). Petitioners further contend that the remainder of the unexplained deposits consists of transfers of funds between petitioners' *314 various bank accounts, insurance reimbursements for medical payments made by petitioners, loans entered into by petitioners, and moneys earned by petitioners' children while attending college. The use of the bank deposits method for computing income has been authorized by the courts for many years. Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977). Bank deposits are prima facie evidence of income. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Estate of Mason v. Commissioner, supra at 656; see also Estate of Hague v. Commissioner, 132 F.2d 775, 777-778 (2d Cir. 1943), affg. 45 B.T.A. 104 (1941). *315 In analyzing a bank deposits case, deposits will be considered income when there is no evidence that they represent anything other than income. Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964); United States v. Doyle, 234 F.2d 788, 793 (7th Cir. 1956). Petitioners provided the Court with a detailed summary of the banking activity for their accounts. We accept petitioners' testimony that the disputed deposits came from nontaxable sources. Accordingly, we do not sustain respondent's determination that petitioners' gross income for 1986 should be increased to reflect the bank deposits made by petitioners. Issue 2. Deductions
A. 1986 Schedule C Expenses
On Schedule C attached to their 1986 Federal income tax return, petitioners claimed the following deductions: Advertising
$ 1,309
Bank service charges
34
Car and truck expenses
3,824
Depreciation
1,766
Dues
340
Legal and prof. services
144
Office expense
1,139
Rent on business property
3,600
Travel and entertainment
615
Utilities and telephone
906
P.O. box rental
53
Total  13,730
Respondent disputes all of the above Schedule C deductions. *316 It is axiomatic that taxpayers do not have an inherent right to take tax deductions. Deductions are a matter of legislative grace, requiring the taxpayers to establish their right to take them. Deputy v. duPont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers are required to keep books and records so that they can file true and correct returns. Sec. 6001; secs. 1.446-1(a)(4), 1.6001-1(a), Income Tax Regs. A taxpayer will generally be released from the normal substantiation requirements if he establishes that (1) he at one time possessed adequate records, and (2) his loss of these records is due to circumstances beyond his control. Sec. 1.274-5(c)(5), Income Tax Regs. In such a situation, the taxpayer is required to reasonably reconstruct his expenditures. Gizzi v. Commissioner, 65 T.C. 342, 345 (1975); Neece v. Commissioner, T.C. Memo. 1986-121. Petitioners testified that a wind and hail storm destroyed the storage shed in which they maintained their 1986 records. At trial, petitioners provided copies of insurance *317 reports documenting the destruction of the shed. We are satisfied that petitioners' failure to provide records stems from the destruction of the storage shed in which such records were stored. However, with regard to their Schedule C expenses, petitioners have failed to attempt to reasonably reconstruct their records. See Gizzi v. Commissioner, supra at 345. Despite having several years to contact third-party payees, the record contains no evidence of petitioners' attempting to obtain verification of any of the aforementioned expenses. Further, petitioners did not provide any information regarding the dates, amounts, and payees of their individual expenses. While it is within our purview to estimate the amount of the allowable deductions for many of the expenses claimed, Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), we must have some basis on which an estimate may be made, Vanicek v. Commisssioner, 85 T.C. 731, 743 (1985). Here, except for petitioners' self-serving testimony, which we are not required to accept, there is no basis on which an estimate may be made. Accordingly, we sustain *318 respondent's determination regarding petitioners' 1986 Schedule C expenses. B. 1987 Scheudle C Expenses
On Schedule C attached to their 1987 Federal income tax return, petitioners claimed several deductions. In the statutory notice of deficiency for 1987, respondent disallowed all Schedule C deductions. Respondent has since conceded the following disallowed amounts: Amount
Disallowed
Now Conceded
Cost of goods sold
$ 2,160
$ 1,700
Advertising
1,265
462
Bank service charges
63
63
Car and truck expenses
4,026
2,013
Office expense
525
1,375
Rent on business property
3,950
1,180
Travel and entertainment
700
872
Utilities and telephone
420
451
Other
671
632
Legal expense
0
1,127
Depreciation
0
232
Total  13,780
10,107
The following deductions remain in dispute: Cost of goods sold
$ 460
Advertising
803
Car and truck expenses
2,013
Rent on business property
2,770
Total  6,046
At trial, petitioners produced detailed contemporaneous logs documenting their car and truck expenses. We find these logs to be accurate. Sec. 274(d). Accordingly, we do not sustain respondent's determination regarding car and truck expenses. Petitioners *319 have not, however, produced convincing evidence to substantiate their other 1987 Schedule C expenses in excess of the amounts allowed by respondent. Further, the claimed deduction for "rent on business property" relates not to business property but to petitioners' residence. Accordingly, except as noted above, we sustain respondent's determination regarding petitioners' 1987 Schedule C expenses. C. 1989 Schedule C Expenses
On Schedule C attached to their 1989 Federal income tax return, petitioners claimed the following deductions: Advertising
$ 3,285
Bad debts
5,000
Car and truck expense
3,778
Insurance
144
Legal and prof. services
235
Office expense
3,725
Meals and entertainment
1,248
Utilities
235
Bank charges
185
Ins. license renew
90
Total  17,925
Respondent concedes that petitioners are entitled to deduct all but the car and truck expense, meals and entertainment, and bad debts. At trial, petitioners produced detailed contemporaneous logs documenting their car and truck expenses and their meals and entertainment. Again, we find these logs to be accurate. Sec. 274(d). Accordingly, we do not sustain respondent's determination regarding car and truck *320 expenses and meals and entertainment. Wayne owned Arizona Associated Builders, an unincorporated business enterprise that constructed and repaired houses. In connection with unpaid bills for building materials purchased by Arizona Associated Builders, Lumber Country obtained a judgment against Wayne for approximately $ 30,000. Wayne settled this judgment in 1989 for $ 5,000. At trial, petitioners presented a check stub and other evidence documenting that they sustained a $ 5,000 loss with respect to this business venture. Petitioners reported the loss as a bad debt on a 1989 Schedule C that they filed with respect to another business enterprise. While we believe that petitioners mischaracterized their loss as a business bad debt, we are satisfied that they did in fact suffer a $ 5,000 business loss. Consequently, we hold that they are entitled to the claimed $ 5,000 Schedule C deduction. As a result of respondent's concession and the aforementioned findings, respondent's determination regarding petitioners' 1989 Schedule C expenses is not sustained. D. 1987 Subchapter S Loss
Wayne filed a 1987 corporate income tax return, Form 1120S, for United American. The return reflects *321 gross receipts of $ 8,287, and a net loss of $ 23,731. In the statutory notice of deficiency for 1987, respondent disallowed all amounts claimed for cost of goods sold and expenses on the corporate return, resulting in an increase in income of $ 32,018. Respondent has since conceded the following disallowed amounts: Amount
Disallowed
Now Conceded
Cost of goods sold
$ 970
$ 970
Bad debts
500
0
Rents
6,058
2,903
Depreciation
8,454
8,436
Advertising
9,535
7,397
Telephone
1,618
1,618
Utilities
1,421
1,421
Insurance
143
143
Multiple listing
service fee 864
864
Office supplies
1,621
1,621
Legal
150
150
Miscellaneous
684
54
Total  32,018
25,577
The following deductions remain in dispute: Bad debts
$ 500
Rents
3,155
Depreciation
18
Advertising
2,138
Miscellaneous
630
Total  6,441
Petitioners have failed to produce convincing evidence to substantiate their 1987 subchapter S loss in excess of the amount allowed by respondent. Accordingly, we sustain respondent's determination on this issue. E. 1988 Subchapter S Loss
Wayne filed a 1988 corporate income tax return, Form 1120S, for United American. The return reflects gross receipts *322 of $ 123,252 and a net loss of $ 17,400. In the statutory notice of deficiency for 1988, respondent disallowed all amounts claimed for cost of goods sold and expenses on the corporate return, resulting in an increase in income of $ 140,652. Respondent has since conceded the following disallowed amounts: Amount
Disallowed
Now Conceded
Cost of goods sold
$ 84,430
$ 84,430
Salaries
7,085
7,085
Rents
11,310
11,310
Advertising
22,070
9,838
Telephone
2,475
2,475
Utilities
2,421
2,421
Bad check fee
50
50
Insurance
920
920
Office supplies
5,282
2,542
Multiple listing
2,949
2,304
Miscellaneous
588
588
Returns/allowances
1,072
1,072
Total  140,652
125,035
The following deductions remain in dispute: Advertising
$ 12,232
Office supplies
2,740
Multiple listing
645
Total  15,617
Petitioners have failed to produce convincing evidence to substantiate their 1988 subchapter S loss in excess of the amount allowed by respondent. Accordingly, we sustain respondent's determination on this issue. Issue 3. Additions to Tax and Accuracy-Related Penalty
Petitioners failed to present any evidence that would show that respondent's determinations *323 of the additions to tax and the accuracy-related penalty were incorrect. Thus, they have not met their burden of proof. See Rule 142(a). Accordingly, we sustain respondent's determinations that petitioners are liable for the additions to tax pursuant to section 6653(a) and the accuracy-related penalty pursuant to section 6662(a). Further, if the Rule 155 computations produce understatements of income tax that exceed the statutory threshold provided in section 6661, then we hold that petitioners are liable for the additions to tax pursuant to section 6661 as well. To reflect the foregoing and concessions by respondent, Decisions will be entered under Rule 155. Footnotes
1. Plus 50 percent of the interest due on $ 35,784.↩
2. Plus 50 percent of the interest due on the deficiency.↩
1. Wayne testified that moneys received as a result of the fund-raising activities were either spent covering the expenses incurred in raising the money or given to the South Tucson Firefighters Association.↩