T.C. Memo. 1999-375

UNITED STATES TAX COURT

PAUL I. YOSHIHARA, LAURA L. YOSHIHARA, AND KRISTA A. YOSHIHARA,
Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19171-97.                    Filed November 12, 1999.

Laura L. Yoshihara, pro se.

Robert S. Scarbrough, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARR, Judge:  Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows:

### Paul I. Yoshihara (Mr. Yoshihara)

| Year | Deficiency | Additions to tax | |
|------|------------|------------------|--|
| | | Sec. 6651(a)(1) | Sec. 6654 |
| 1992 | $30,911 | $7,728 | $1,348 |
| 1993 | 17,912 | 4,478 | 751 |
| 1994 | 6,452 | 1,613 | 332 |
| 1995 | 6,802 | 1,701 | 370 |

Laura L. Yoshihara (Mrs. Yoshihara)

| Year | Deficiency | Additions to tax Sec. 6651(a)(1) | Sec. 6654 |
|------|-----------|-----------------------------------|-----------|
| 1992 | $21,958 | $5,490 | $955 |
| 1993 | 9,551 | 2,388 | 399 |
| 1994 | 3,235 | 809 | 167 |
| 1995 | 3,492 | 873 | 193 |

Krista A. Yoshihara

| Year | Deficiency | Additions to tax Sec. 6651(a)(1) | Sec. 6654 |
|------|-----------|-----------------------------------|-----------|
| 1992 | $48,493 | $12,123 | $2,112 |
| 1993 | 19,493 | 4,873 | 818 |

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

After concessions,[1] the issues for decision are: (1) Whether petitioners had unreported income from landscaping services for the taxable years 1992, 1993, 1994, and 1995. We hold they did. (2) Whether Mr. Yoshihara incurred self-employment tax for the taxable years 1992, 1993, 1994, and 1995.

[1]On brief, respondent states that the notice of deficiency relating to 1992 and 1993 sent to Krista A. Yoshihara was only a protective measure to avoid a whipsaw situation. Accordingly, respondent concedes that there is no deficiency against Krista A. Yoshihara for 1992 and 1993 if we sustain the deficiencies against petitioners Paul I. Yoshihara and Laura L. Yoshihara. Although the deficiency amounts for 1993 will be recalculated under a Rule 155 computation to reflect our findings, this decision does not place respondent in a whipsaw situation. Therefore, the deficiency determined for Krista A. Yoshihara is conceded. Consequently, the term "petitioners" in the remainder of this opinion refers exclusively to Paul I. Yoshihara and Laura L. Yoshihara.

We hold he did. (3) Whether petitioners are liable for additions to tax under section 6651(a) for failure to timely file their Federal income tax returns for the taxable years 1992, 1993, 1994, and 1995. We hold they are liable. (4) Whether petitioners are liable for additions to tax under section 6654 for failure to pay estimated tax for the taxable years 1992, 1993, 1994, and 1995. We hold they are liable.

We find the following facts based upon the pleadings of this case and the deemed admissions contained in respondent's request for admissions.[2]

## FINDINGS OF FACT

Petitioners resided in Everett, Washington, at the time the petition was filed in this case. The taxable years in issue are 1992, 1993, 1994, and 1995.

For the taxable year 1991, petitioners filed a tax return which reflected a Schedule C business named Yoshihara Landscaping. In each of the years in issue, petitioners contracted to do business in the State of Washington in the name of the following entities (or a combination of these entities): Mountlake College (Mountlake); Yoshihara Landscaping (Landscaping); and Green Acres Landscaping (Green Acres). During

---

[2]Rule 90(f) provides in relevant part: "Any matter admitted under this Rule is conclusively established unless the Court on motion permits withdrawal or modification of the admission."

the years in issue, petitioners received checks made payable to Landscaping or Paul Yoshihara for landscaping services performed. In 1992, 1993, 1994, and 1995, petitioners received income from landscaping services totaling $175,258, $74,895, $25,995, and $27,290, respectively. During 1994 and 1995, petitioners expended a total of $47,300 for food, housing, transportation, clothing, medical expenses, and other personal items.

Although petitioners received income from landscaping services, petitioners did not file tax returns for 1992, 1993, 1994, and 1995. In addition, petitioners have no documentation substantiating any loans, nontaxable income, gifts, or inheritances that they may have received during 1992, 1993, 1994, and 1995.

Petitioners assigned all income they earned from 1992 through 1995 to Mountlake. Mountlake is a nonprofit corporation formed in the State of Washington in 1965. The only individuals attending Mountlake between 1992 and 1995 were petitioners or their family members. In addition, petitioners were the only individuals who held signature authority over accounts used by

Mountlake between 1992 and 1995.[3]  Tax exempt status has never been obtained for Mountlake under section 501(c)(3).[4]

OPINION

Issue 1.  Unreported Income From Landscaping Services

The Commissioner's determinations of fact are presumptively correct, and the taxpayer bears the burden of proving by a preponderance of evidence that those determinations are erroneous.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); United States v. Molitor, 337 F.2d 917, 922 (9th Cir. 1964).

A.  Reconstruction of Income

Respondent used indirect methods of reconstructing petitioners' income for the years in issue.  Deficiencies arising from unreported income as determined by indirect methods of proof are entitled to a presumption of correctness "once some substantive evidence is introduced demonstrating that the taxpayer received unreported income."  United States v. Stonehill, 702 F.2d 1288, 1293 (9th Cir. 1983).  Petitioners admit that they received income from the provision of landscaping services.  The burden is therefore on petitioners to show any

_____

[3]In 1992, 1993, 1994, and 1995, petitioners were also the only individuals to hold signature authority over accounts used by Green Acres and Landscaping.

[4]We also note that tax-exempt status has never been obtained for Green Acres or Landscaping.

claimed inaccuracy in respondent's calculations.  See id. at
1294; Webb v. Commissioner, 394 F.2d 366, 372 (5th Cir. 1968),
affg. T.C. Memo. 1966-81; DiLeo v. Commissioner, 96 T.C. 858, 871
(1991), affd. 959 F.2d 16 (2d Cir. 1992); Harper v. Commissioner,
54 T.C. 1121, 1129 (1970).  The reconstruction of income need
only be reasonable in light of all surrounding facts and
circumstances.  See Giddio v. Commissioner, 54 T.C. 1530, 1533
(1970); Schroeder v. Commissioner, 40 T.C. 30, 33 (1963).  For
1992 and 1993, respondent determined petitioners' income using
the bank deposits method.  In 1994 and 1995, respondent
determined petitioners' income using the cash expenditures
method.

### 1.  Bank Deposits Analysis

In general, the bank deposits method reconstructs a
taxpayer's income by analyzing deposits and withdrawals from a
taxpayer's bank account.  See Dodge v. Commissioner, 96 T.C. 172,
181 (1991), affd. in part and revd. in part on another ground and
remanded 981 F.2d 350 (8th Cir. 1992).  Bank deposits are prima
facie evidence of income, and the Commissioner need not show a
likely source of that income.  See Tokarski v. Commissioner, 87
T.C. 74, 77 (1986); Estate of Mason v. Commissioner, 64 T.C. 651,
656-657 (1975), affd. 566 F.2d 2 (6th Cir. 1977).  When the bank
deposits method is employed, however, the Commissioner must take
into account any nontaxable source or deductible expense of which

he has knowledge. See DiLeo v. Commissioner, supra at 868. However, the Commissioner is not required to show that all deposits constitute taxable income. See Estate of Mason v. Commissioner, supra at 657; Gemma v. Commissioner, 46 T.C. 821, 833 (1966). Consequently, in analyzing a bank deposits case, deposits are considered income when there is no evidence that they represent anything other than income. See Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964); United States v. Doyle, 234 F.2d 788, 793 (7th Cir. 1956). The burden of showing duplications is on the taxpayer. See Zarnow v. Commissioner, 48 T.C. 213, 216 (1967).

On the basis of the deemed admissions, respondent determined petitioners received $175,258 and $74,895 in income from landscaping services during 1992 and 1993, respectively. At trial or on brief petitioners did not question respondent's determinations of the amount of income earned by them in 1992 and 1993. In addition, petitioners are deemed to have admitted that they have no documentation substantiating any loans, nontaxable income, gifts, or inheritances they may have received during 1992 or 1993. Accordingly, petitioners did not meet their burden of proving that respondent's determinations of petitioners' income for 1992 and 1993 was erroneous.

In 1992, the income deemed admitted is $220 greater than the income amount in the notices of deficiency sent to petitioners.

- 8 -

Because respondent has not asserted an increased deficiency in 1992 to reflect the full amount of income deemed admitted, we disregard the additional $220.

The notices of deficiency for 1993 determined income from landscaping services totaling $96,228.  Petitioners are deemed to have admitted that they received $74,895 in income from such services in 1993.  Respondent presented no evidence to substantiate the greater amount determined in the notices of deficiency.  Accordingly, we hold that petitioners received income of $74,895 in 1993.

### 2.  Cash Expenditures Analysis

The cash expenditures method is a variant of the net worth method that is designed to reconstruct the income of a taxpayer who consumes his income during the year and does not invest it. See Petzoldt v. Commissioner, 92 T.C. 661, 694 (1989).  This method is well accepted by the courts.  See United States v. Johnson, 319 U.S. 503, 517-518 (1943); DeVenney v. Commissioner, 85 T.C. 927, 930 (1985).  It is based on the assumption that the amount by which a taxpayer's expenditures during a taxable year exceed his reported income has taxable origins, unless the taxpayer can show that the expenditures were made from some nontaxable source.  See DeVenney v. Commissioner, supra at 930. Income is reconstructed pursuant to the cash expenditures method as follows:

after taking into account the amount of resources the taxpayer had on hand at the beginning of a period, the income received by the taxpayer for the same period is compared with his expenditures that are not attributable to his resources on hand or non-taxable receipts during the period. A substantial excess of expenditures over the combination of reported income, non-taxable receipts, and cash on hand may establish the existence of unreported income. [United States v. Citron, 783 F.2d 307, 310 (2d Cir. 1986); fn. ref. omitted.]

Formal opening net worth statements are not required provided the evidence shows "'the extent of any contribution which beginning resources or a diminution of resources over time could have made to expenditures.'" Petzoldt v. Commissioner, supra at 695 (quoting Taglianetti v. United States, 398 F.2d 558, 565 (1st Cir. 1968)). To carry their burden of proof, petitioners must show that the expenditures in question were made from some nontaxable source of funds, such as loans, gifts, or assets on hand at the beginning of the period. See DeVenney v. Commissioner, supra at 931. Alternatively, petitioners may show that the expenditures were allowable business expenses, in which case they would offset the income presumed to have been received by them. See Curry v. Commissioner, T.C. Memo. 1991-102.

At trial or on brief petitioners did not question respondent's determinations, based on the cash expenditures method, of the amount of income earned by them in 1994 and 1995. In addition, petitioners are deemed to have admitted that they

have no documentation substantiating the receipt of any loans, nontaxable income, gifts, or inheritances during 1994 or 1995.

Respondent determined that petitioners expended a total of $47,300 for food, housing, transportation, clothing, medical expenses, and other personal items in 1994 and 1995. However, respondent conceded on brief that petitioners used only $25,995 and $27,290 of income to make those expenditures in 1994 and 1995, respectively. In the notices of deficiency, respondent states that income must be divided equally between petitioners because they reside in Washington, a community property State. We agree with this determination. However, for 1994 and 1995, the notice of deficiency sent to Mr. Yoshihara assigns 100 percent of petitioners' income to him, and the notice of deficiency sent to Mrs. Yoshihara assigns 100 percent of petitioners' income to her. This results in a double counting. On the basis of respondent's concession, we find that income totaling $25,995 in 1994 and $27,290 in 1995 should be divided equally between petitioners. This finding should be reflected in the Rule 155 calculation.

## B. Petitioners' Legal Contentions

In their amended petition, petitioners asserted that they have "taken vows of poverty and are members and/or overseers of the religious societies" where "Any and all funds and donations are given to the general membership to run the religious

societies".  Further, on brief, petitioners assert that "Churches that are not [section] 501C3 are not under IRS regulation code".  Respondent determined that petitioners are liable for tax on their income from landscaping services.

Petitioners earned income from landscaping services during the years in issue.  Petitioners assigned the income they earned to Mountlake.  Respondent determined that the income derived from landscaping services must be included in petitioners' income pursuant to section 61.  Section 61(a) provides that, except as otherwise provided by law, gross income includes income from whatever source derived, including compensation for services.  See sec. 61(a)(1).

It is fundamental to our system of taxation that income must be taxed to the one who earns it.  See Commissioner v. Culbertson, 337 U.S. 733, 739-740 (1949).  This has been described as "the first principle of taxation".  Id. at 739.  The question of who should be taxed depends on which person or entity in fact controls the earning of the income rather than who ultimately receives the income.  See Commissioner v. Sunnen, 333 U.S. 591, 604-606 (1948); Corliss v. Bowers, 281 U.S. 376, 378 (1930); Vercio v. Commissioner, 73 T.C. 1246, 1253 (1980); see also Ronan State Bank v. Commissioner, 62 T.C. 27, 35 (1974); American Sav. Bank v. Commissioner, 56 T.C. 828 (1971); Nat Harrison Associates, Inc. v. Commissioner, 42 T.C. 601 (1964).  A

taxpayer realizes income if he controls the disposition of that which he could receive himself but diverts to another as a means of procuring the satisfaction of his goals.  The receipt of income by the other party under such circumstances is merely the fruition of the taxpayer's economic gain.  See Commissioner v. Sunnen, supra at 605-606; Helvering v. Horst, 311 U.S. 112, 116-117 (1940).

In this case, petitioners attempted to assert that they had taken "vows of poverty" assigning "Any and all funds" to a religious institution(s).[5]  Petitioners offered no evidence to substantiate their claim.  When secular services are rendered by individuals, income received by them in an individual capacity and not on behalf of a separate and distinct principal is taxable to the individuals.  See Pollard v. Commissioner, 786 F.2d 1063 (11th Cir. 1986), affg. T.C. Memo. 1984-536; McGahen v. Commissioner, 76 T.C. 468 (1981), affd. without published opinion 720 F.2d 664 (3d Cir. 1983); Kelley v. Commissioner, 62 T.C. 131 (1974).  Accordingly, we find the income earned by petitioners for landscaping services is taxable to them individually.

---

[5]We see no need to address whether Mountlake is a church or other religious institution.  Petitioners did not assert at trial or on brief that the income assigned to Mountlake qualified for the charitable contribution deduction under sec. 170.  In addition, since Mountlake is not a sec. 501(c)(3) organization, there is no presumption that petitioners' contributions to the organization are deductible from their taxable income.  See sec. 170(c) (defining deductible charitable contribution).

Where taxpayers have trade or business income, they ordinarily have business and other deductions. Deductions are strictly a matter of legislative grace, however, and petitioners bear the burden of providing evidence to substantiate the claimed deductions. See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). A taxpayer must keep sufficient records to establish their amount. See sec. 6001. Except in the case of expenses subject to section 274, if the taxpayer's records are inadequate or there are no records, we may still allow a deduction based on a reasonable estimate. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). However, the taxpayer must present evidence sufficient to provide some rational basis upon which estimates of deductible expenses may be made. See Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). In this case, petitioners provided no evidence at trial or argument on brief that they are entitled to deductions from their income.[6] Accordingly, we cannot estimate petitioners' deductions under the Cohan rule.

---

[6]At trial, this Court repeatedly asked petitioners whether they were entitled to various deductions from their income. Petitioners refused to offer any evidence substantiating deductions. This Court also held the record open for 10 days after the trial to allow petitioners to substantiate any deductions. Petitioners presented no posttrial evidence substantiating the entitlement to deductions.

Issue 2.  Self-Employment Tax

In the notice of deficiency issued to petitioner Paul I. Yoshihara, respondent determined that he was liable for self-employment tax on the unreported income from landscaping services.  Section 1401 imposes a tax on the self-employment income of every individual.  An individual's self-employment income depends on his "net earnings from self-employment".  Sec. 1402(b).  In relevant part, the term "net earnings from self-employment" means the gross income derived by an individual from any trade or business carried on by such individual less allowable deductions attributable to such trade or business.  See sec. 1402(a).  Under section 1402(a)(5), where the income from a trade or business is community income, as in this case, all of the gross income and deductions attributable to such trade or business shall be treated as the gross income and deductions of the husband, unless the wife exercises substantially all of the management and control of the trade or business, in which case all such gross income and deductions shall be treated as hers. Accordingly, under section 1401, the spouse deemed to have management and control of the business activity is subject to self-employment tax, and the tax is computed on the total gross income less the total deductions of the business, notwithstanding the attribution of one-half of the income to the other spouse for income tax purposes.

On brief, respondent contends that petitioners are liable for self-employment tax.  Respondent's brief is contrary to the notices of deficiency sent to petitioners.  In the notices of deficiency, only Mr. Yoshihara is determined to have liability for self-employment tax under section 1401.  On the basis of the record and sections 1401 and 1402(a)(5), we find that all the self-employment tax liability for 1992, 1993, 1994, and 1995 is attributable to the business managed and controlled by Mr. Yoshihara, and that he is liable for self-employment tax during the years in issue.

Issue 3.  Failure To Timely File Tax Return or To Pay Tax

Petitioners did not file tax returns for any of the years in issue.  Respondent determined that the addition to tax for failure to timely file a tax return was applicable for each of the years in issue.  An income tax return must be filed by all individuals receiving gross income in excess of certain minimum amounts.  See sec. 6012; sec. 1.6012-1(a), Income Tax Regs.  For 1992, 1993, 1994, and 1995, petitioners' gross income, as defined in section 61(a), was well in excess of the minimum amounts specified in section 6012.  Therefore, petitioners were required to file Federal income tax returns for 1992, 1993, 1994, and 1995.  See secs. 6011, 6012(a)(1)(A), 7701(a)(1); sec. 1.6012-1(a), Income Tax Regs.

- 16 -

Section 6651(a) imposes an addition to tax for failure to timely file a return, unless the taxpayer establishes:  (1) The failure did not result from willful neglect; and (2) the failure was due to reasonable cause.  See United States v. Boyle, 469 U.S. 241, 245-246 (1985).  Petitioners bear the burden of proof on this issue.  See Rule 142(a); Baldwin v. Commissioner, 84 T.C. 859, 870 (1985).  Petitioners failed to prove reasonable cause for their failure to file.  Accordingly, the addition to tax for failure to file returns under section 6651(a) is sustained.

Issue 4.  Failure To Pay Estimated Income Tax

Respondent determined that petitioners were liable for the addition to tax under section 6654(a) for failure to pay estimated tax for 1992, 1993, 1994, and 1995.  Where payments of tax, either through withholding or by making estimated quarterly tax payments during the course of the year, do not equal the percentage of total liability required under the statute, imposition of the addition to tax under section 6654(a) is automatic, unless petitioners show that one of the statutory exceptions applies.  See Niedringhaus v. Commissioner, 99 T.C. 202, 222 (1992); Habersham-Bey v. Commissioner, 78 T.C. 304, 319-320 (1982); Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980).  Petitioners have provided no evidence at trial or argument on brief that any of these exceptions apply.  We therefore sustain respondent on this issue.

All other contentions in this case that have not been addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.