T.C. Summary Opinion 2003-124

UNITED STATES TAX COURT

SHEILA MAE HOWARD, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1853-02S.                    Filed September 4, 2003.

Sheila Mae Howard, pro se.

Michael A. Pesavento, for respondent.


ARMEN, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time that the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

---

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioner's Federal income taxes and accuracy-related penalties as follows:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|---------------------|
| 1996 | $15,457 | $3,091.40 |
| 1997 | 9,377 | 1,875.40 |
| 1998 | 4,100 | --- |

After concessions by the parties,[2] the issues remaining for decision are:

(1) Whether petitioner is entitled to Schedule C, Profit or Loss From Business, deductions for the taxable years at issue in excess of the amounts allowed by respondent in the notice of deficiency.  We hold that she is not.

(2) Whether petitioner's horse breeding activity was an activity engaged in for profit within the meaning of section 183(a) for the taxable years at issue.  We hold that it was not.

(3) Whether petitioner received unreported income during

---

[2]  Respondent concedes that petitioner incurred a capital loss on the sale of a truck in 1998 in the amount of $1,009 as claimed by her on Form 4797, Sales of Business Property.

Respondent also concedes the amount realized by petitioner in 1998 on the sale of a house that she built for sale. Respondent further concedes that petitioner incurred a long-term capital loss in 1998 with respect to the sale of this house but in an amount ($13,910) less than that claimed by petitioner on her 1998 return ($38,000).  However, because of the $3,000 limitation on capital losses in sec. 1211(b), we need not decide the exact amount of the loss because it will have no tax effect in 1998, the latest of the taxable years in issue.  See sec. 1212(b) regarding capital loss carryovers.

Petitioner concedes that she received unreported interest income in the amounts of $941, $32, and $1 during 1996, 1997, and 1998, respectively, and that she is entitled to a mortgage interest deduction for 1998 in the amount of $4,909.

1996 and 1997. Subject to respondent's concessions and adjustments, we hold that she did.

(4) Whether petitioner is entitled to a dependency exemption for Carl Collins for 1998. We hold that she is not.

(5) Whether petitioner is liable for accuracy-related penalties under section 6662(a) for 1996 and 1997. We hold that she is to the extent provided herein.

Adjustments relating to petitioner's itemized deductions for the taxable years at issue, self-employment taxes for 1996 and 1997, the earned income credit for 1996 and 1997, and the child tax credit for 1998 are purely perfunctory matters, the resolution of which is dependent on our disposition of the issues above.

## Background

Some of the facts have been stipulated, and they are so found. Petitioner resided in Ocala, Florida, at the time that her petition was filed with the Court.

During the taxable years at issue, petitioner was employed on a full-time basis as a paralegal. Petitioner received wages from employment in the amounts of $43,454, $46,277, and $42,443 during 1996, 1997, and 1998, respectively.[3]

Petitioner has two children. In addition to her own children, petitioner helped raise Carl Collins, the child of a

_____

[3] All amounts are rounded to the nearest dollar.

close family friend. Carl began living with petitioner when he was 11 months old. Carl was not petitioner's adopted child. During 1998, Carl was about 11 years old and lived with his grandmother. Carl visited petitioner during 1998 on weekends, holidays, and on his summer break from school.

A. Anchor Inn

During the taxable years at issue, petitioner operated a fish camp named the Anchor Inn. Petitioner purchased the Anchor Inn from her mother in or around 1990. The Anchor Inn is approximately 1.7 acres in size and is located on Lake Kerr. The Anchor Inn has six rental units and a boat ramp. Each rental unit has one bedroom and one bath.

The majority of petitioner's rentals were from February to May each year. Rentals were generally short-term, typically for the day or weekend. Petitioner rented each unit for approximately $30 to $35 per night. Guests were not charged for use of the Anchor Inn's boat ramp. Petitioner requested a minimal cash fee from nonguests for use of the boat ramp.

In or around 1993, petitioner purchased the land and two houses adjacent to the Anchor Inn from her mother. During the taxable years at issue, petitioner and her mother resided separately in the two houses.

B. Horse Breeding Activity

During the years at issue, petitioner operated a horse

breeding activity. Petitioner had been raised around, and was familiar with, horses.

Prior to starting the horse breeding activity, petitioner consulted horse trainers and breeders about the nature of horse breeding. Petitioner's objective was to enter horses in "cutting" competitions and then later breed the horses.[4]

In or around 1995, petitioner purchased her first horse. Later, petitioner purchased a second horse for use in the horse breeding activity. Petitioner hired a professional trainer for the horses. The horses were originally stabled and trained in Georgia, about 265 miles from petitioner's Florida residence. Petitioner and her children would visit the stable approximately three weekends each month.

Petitioner did not prepare a written business plan with respect to her horse breeding activity. Petitioner's records consisted solely of canceled checks and a few receipts.

C. Petitioner's Income Tax Returns

Petitioner filed a Form 1040, U.S. Individual Income Tax Return, for each of the taxable years at issue, and reported her wages from her employment as a paralegal. On her return for each of the taxable years at issue, petitioner identified Carl as either "child" or "son" and claimed a dependency exemption for

---

[4] "Cutting" was described by petitioner as training a horse to "cut" one cow from a herd of cattle.

him.

Petitioner reported income and expenses from the Anchor Inn on her Federal income tax returns for 1996 through 1998 on Schedules C as follows:

| Year | Gross Income Reported | Total Expenses Claimed | Total Losses Claimed |
|------|----------------------|------------------------|----------------------|
| 1996 | $6,136 | $37,215 | $31,079 |
| 1997 | 6,045 | 27,821 | 21,776 |
| 1998 | 8,586 | 17,822 | 9,236 |

Petitioner reported income and expenses from the horse breeding activity on her Federal income tax returns for 1996 through 1998 on Schedules F, Profit or Loss From Farming, as follows:

| Year | Gross Income Reported | Total Expenses Claimed | Total Losses Claimed |
|------|----------------------|------------------------|----------------------|
| 1996 | $1,901 | $11,037 | $9,136 |
| 1997 | 1,576 | 25,109 | 23,533 |
| 1998 | 2,300 | 14,997 | 12,697 |

D. The Notice of Deficiency

In the notice of deficiency, respondent determined that with respect to the Anchor Inn, petitioner had not substantiated Schedule C expenses for 1996, 1997, and 1998, in excess of $25,305, $25,023, and $15,490, respectively. Respondent also determined that petitioner's horse breeding activity was not an activity engaged in for profit within the meaning of section 183 and disallowed all of her Schedule F deductions to the extent

they exceeded her gross receipts.[5]

Further, using the bank deposits and cash expenditures method of income reconstruction, respondent determined that petitioner had unreported income in 1996 and 1997 of $45,719 and $29,130, respectively. Respondent now concedes that petitioner received an additional $36,863 from nontaxable sources in 1996 and an additional $20,500 from nontaxable sources in 1997. Respondent therefore now contends that petitioner had unreported income in 1996 and 1997 of $8,856 and $23,767, respectively.[6]

In addition, respondent disallowed petitioner's claimed dependency exemption for Carl for 1998.

Finally, respondent determined that petitioner was liable for accuracy-related penalties under section 6662(a) for 1996 and 1997 due to a substantial understatement of income tax.

Discussion

In general, the determinations of the Commissioner in a notice of deficiency are presumed correct, and the burden is on

---

[5] Respondent allowed petitioner deductions on Schedules A, Itemized Deductions, for interest and taxes without regard to income from the horse breeding activity. Respondent allowed petitioner miscellaneous itemized deductions on Schedules A for the remaining expenses related to the horse breeding activity. Respondent reclassified petitioner's Schedules F gross income as other income.

[6] At trial, respondent asserted that petitioner's deposits for 1997 were erroneously understated in the notice of deficiency and should be increased by $15,137. However, due to respondent's concession of additional nontaxable sources in 1997, respondent does not seek an increased deficiency.

the taxpayer to show that the determinations are incorrect.  See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933).[7]

A.  Petitioner's Schedule C Deductions

We begin with several fundamental principles that serve to guide the decisional process.

First, deductions are a matter of legislative grace.  Deputy v. duPont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Second, a taxpayer bears the burden of proving that the taxpayer is entitled to any deduction claimed.  Rule 142(a); INDOPCO, Inc. v. Commissioner, supra; Welch v. Helvering, supra.

Third, a taxpayer is required to maintain records sufficient to substantiate deductions claimed by the taxpayer on his or her return.  Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.

Fourth, the fact that a taxpayer reports a deduction on the taxpayer's income tax return is not sufficient to substantiate the deduction claimed on the return.  Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979); Roberts v. Commissioner, 62 T.C. 834, 837 (1974).  Rather, a tax return is merely a statement of the taxpayer's claim; the return is not presumed to be correct.

---

[7] Sec. 7491 does not apply in this case to shift the burden of proof to respondent because petitioner neither alleged that sec. 7491 was applicable nor established that she fully complied with the requirements of sec. 7491(a)(2) with respect to any of the issues before the Court.

Wilkinson v. Commissioner, supra at 639; Roberts v. Commissioner, supra at 837; see also Seaboard Commercial Corp. v. Commissioner, 28 T.C. 1034, 1051 (1957) (a taxpayer's income tax return is a self-serving declaration that may not be accepted as proof for the deduction or exclusion claimed by the taxpayer); Halle v. Commissioner, 7 T.C. 245 (1946) (a taxpayer's return is not self-proving as to the truth of its contents), affd. 175 F.2d 500 (2d Cir. 1949).

At trial, petitioner did not introduce any documentary evidence to support that she is entitled to deductions with respect to the Anchor Inn in excess of the amounts allowed by respondent. Likewise, petitioner did not offer testimony at trial in support of any of those deductions.

Under certain circumstances, the Court may estimate the amount of a deductible expense and allow the deduction to that extent. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). However, in the instant case, we have no basis whatsoever on which to approximate any additional deductible expenses with respect to petitioner's operation of the Anchor Inn. See Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). In view of her failure to substantiate, we hold that petitioner is not entitled to the deductions claimed on her Schedules C with respect to the Anchor Inn in excess of the amounts allowed by respondent in the notice of deficiency.

B.  Petitioner's Horse Breeding Activity

Under section 183(a), if an activity is not engaged in for profit, then no deduction attributable to the activity shall be allowed except to the extent provided by section 183(b).  In pertinent part, section 183(b) allows deductions to the extent of gross income derived from an activity that is not engaged in for profit.

Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212".  Deductions are allowable under section 162 or under section 212(1) or (2) if the taxpayer is engaged in the activity with the "actual and honest objective of making a profit".  Ronnen v. Commissioner, 90 T.C. 74, 91 (1988); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983).

The existence of the requisite profit objective is a question of fact that must be decided on the basis of the entire record.  See Benz v. Commissioner, 63 T.C. 375, 382 (1974).  In resolving this factual question, greater weight is accorded objective facts than a taxpayer's statement of intent.  See Westbrook v. Commissioner, 68 F.3d 868, 875-876 (5th Cir. 1995), affg. T.C. Memo. 1993-634; sec. 1.183-2(a), Income Tax Regs.  For purposes of deciding whether the taxpayer has the requisite

profit objective, profit means economic profit, independent of tax savings. See Surloff v. Commissioner, 81 T.C. 210, 233 (1983). The taxpayer bears the burden of proving that he or she engaged in the activity with the objective of making a profit. See Rule 142(a); INDOPCO, Inc. v. Commissioner, supra at 84; Welch v. Helvering, supra at 115.

The regulations set forth a nonexhaustive list of factors that may be considered in deciding whether a profit objective exists. These factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) any elements indicating personal pleasure or recreation. See sec. 1.183-2(b), Income Tax Regs.

No single factor, nor even the existence of a majority of factors favoring or disfavoring the existence of a profit objective, is controlling. See id. Rather, the relevant facts and circumstances of the case are determinative. See Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published

opinion 647 F.2d 170 (9th Cir. 1981).

Based on all of the facts and circumstances in the present case, we hold that petitioner has failed to prove that she engaged in the horse breeding activity for profit within the meaning of section 183.  See Rule 142(a); INDOPCO, Inc. v. Commissioner, supra; Welch v. Helvering, supra.

We do not analyze in depth all nine of the factors enumerated in the regulation but rather focus on some of the more important ones that inform our decision.

The fact that a taxpayer carries on the activity in a businesslike manner and maintains complete and accurate books and records may indicate a profit objective.  Sec. 1.183-2(b)(1), Income Tax Regs.  However, petitioner failed to develop a budget or a formal or informal business plan to determine whether the horse breeding activity could be operated profitably.  Other than canceled checks and a few receipts, petitioner also failed to keep any books and records with respect to the horse breeding activity.  Petitioner did not keep the type of records that could be used to increase the profitability of a business.  Petitioner never prepared budgets or market projections that would outline strategies for ensuring a profitable business venture and making informed business decisions on a periodic basis.  Such lack of information upon which to make educated business decisions tends to belie a taxpayer's contentions that an activity was pursued

with the objective of making a profit.  Dodge v. Commissioner,
T.C. Memo. 1998-89, affd. without published opinion 188 F.3d 507
(6th Cir. 1999).

A taxpayer's expertise, research, and study of an activity,
as well as his or her consultation with experts, may be
indicative of a profit objective.  Sec. 1.183-2(b)(2), Income Tax
Regs.  However, the fact that petitioner had some experience with
horses prior to entering into the horse breeding activity does
not alone show that the horse breeding activity was engaged in
with a profit objective.  See Glenn v. Commissioner, T.C. Memo.
1995-399, affd. without published opinion 103 F.3d 129 (6th Cir.
1996).

Petitioner also sought general advice from other breeders
and trainers.  However, there is no evidence that petitioner
reviewed the records of other breeding operations or sought
specific advice as to how to make her operation profitable.
Petitioner did not point to any evidence that demonstrated how
she planned to reduce her losses and ultimately earn a profit
sufficient to recoup past losses.  See Burger v. Commissioner,
T.C. Memo. 1985-523, affd. 809 F.2d 355 (7th Cir. 1987).

The devotion of a great deal of personal time and effort by
the taxpayer in carrying on an activity may indicate that it is
engaged in for profit, particularly if there are no substantial
personal or recreational elements associated with such activity.

Sec. 1.183-2(b)(3), Income Tax Regs.  However, petitioner was employed full-time as a paralegal during the taxable years at issue.  Petitioner also owned and operated the Anchor Inn. Petitioner testified that she participated in the horse breeding activity only on weekends.

The fact that a taxpayer was able to convert an unprofitable enterprise to a profitable one in the past may indicate that he or she is engaged in the present activity for profit, even though the activity is presently unprofitable.  Sec. 1.183-2(b)(5), Income Tax Regs.  Petitioner has owned and operated the Anchor Inn since about 1990.  During the taxable years 1996 through 1998, petitioner claimed total losses of $62,091 with respect to the Anchor Inn.  Petitioner has not demonstrated the ability to convert an unprofitable enterprise to a profitable one.

A substantial profit, though only occasional, would generally indicate that an activity is engaged in for profit. Sec. 1.183-2(b)(7), Income Tax Regs.  Petitioner earned no profits of any size at any time from her horse breeding activity.

The fact that the taxpayer has substantial income from sources other than the activity in question, particularly if the losses from the activity generate substantial tax benefits, may indicate that the activity is not engaged in for profit.  Sec. 1.183-2(b)(8), Income Tax Regs.  During the taxable years 1996, 1997, and 1998, petitioner reported wage income of $43,454,

$46,277, and $42,443, respectively.  During the same years, petitioner reported Schedule F losses from the horse breeding activity of $9,136, $23,533, and $12,697, respectively. Petitioner used these losses to reduce her gross income by approximately 21 percent for 1996, 51 percent for 1997, and 30 percent for 1998.  These reductions led to substantial tax savings for petitioner.

Considering all the facts and circumstances, we find that petitioner's horse breeding activity was not engaged in for profit within the meaning of section 183(c).  Respondent's determination is therefore sustained.

C.  Petitioner's Unreported Income

As previously noted, taxpayers are required to maintain records sufficient to show whether they are liable for Federal income taxes.  Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs. If a taxpayer fails to keep adequate records, the Commissioner may reconstruct the taxpayer's income by any method that is reasonable under the circumstances.  See Petzoldt v. Commissioner, 92 T.C. 661, 687 (1989).

The bank deposits and cash expenditures method is recognized as a reasonable method of reconstructing income.  See Parks v. Commissioner, 94 T.C. 654, 658 (1990); Nicholas v. Commissioner, 70 T.C. 1057, 1065 (1978).  This method is premised on the assumption that the taxpayer has disposed of unreported income by

depositing part of it into bank accounts and by making cash expenditures of the other part. Williams v. Commissioner, T.C. Memo. 2003-216.

The income reconstruction need not be exact, so long as it is reasonable and substantially correct. Petzoldt v. Commissioner, supra at 693; Schroeder v. Commissioner, 40 T.C. 30, 33 (1963). The Commissioner is not required to show that all deposits constitute taxable income. See Estate of Mason v. Commissioner, 64 T.C. 651, 657 (1975), affd. 566 F.2d 2 (6th Cir. 1977); Gemma v. Commissioner, 46 T.C. 821, 833 (1966). Consequently, in analyzing a bank deposits case, deposits are considered income when there is no evidence that they represent anything other than income. See Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964); United States v. Doyle, 234 F.2d 788, 793 (7th Cir. 1956).

Respondent's bank deposits and cash expenditures analysis reflects that petitioner had unreported income during 1996 and 1997. The bank deposit analysis was performed by first totaling all of the deposits made to petitioner's bank account. Respondent then reduced the total amount of deposits by known nontaxable sources[8] and the income amounts reported on petitioner's tax returns to arrive at petitioner's total net bank

---

[8] Nontaxable sources included, for example, transfers from other accounts and loan proceeds.

deposits.  Finally, respondent then added petitioner's identified cash expenditures to total net bank deposits to determine petitioner's unreported income.

At trial, petitioner did not question respondent's determination as to the amount of unreported income she received in 1996 and 1997.  Petitioner has not alleged, nor have we discovered, any error in respondent's income reconstruction using the bank deposits and cash expenditures method.  Petitioner produced no evidence of any nontaxable sources for the unexplained funds deposited in her bank account or the cash used to make payments in any of the years in issue.  Accordingly, as asserted by respondent at trial, we conclude that petitioner had unreported income in the amounts of $8,856 in 1996 and $23,767 in 1997.

D.  Dependency Exemption

Section 151(c) allows a taxpayer to claim an exemption for each dependent, as defined in section 152.  In order to qualify as a dependent, an individual must be related to the taxpayer in one of the ways enumerated in section 152(a)(1) through (8), or, if the individual is unrelated to the taxpayer, the individual must live with the taxpayer and be a member of the taxpayer's household throughout the entire taxable year of the taxpayer. Sec. 152(a)(9); Trowbridge v. Commissioner, 268 F.2d 208 (9th Cir. 1959), affg. 30 T.C. 879 (1958); Turay v. Commissioner, T.C.

Memo. 1999-315; <u>Butler v. Commissioner</u>, T.C. Memo. 1998-355;
sec. 1.152-1(b), Income Tax Regs.

Although petitioner identified Carl as her son on her 1998
return, she is not related to him by blood or marriage, nor did
she adopt him.  Carl did not live with petitioner during all, nor
even the majority, of 1998.  Accordingly, we sustain respondent's
determination that petitioner is not entitled to claim a
dependency exemption for Carl for 1998.

E.  <u>Section 6662(a)</u>[9]

The last issue for decision is whether petitioner is liable
for accuracy-related penalties pursuant to section 6662(a) for
1996 and 1997.  As relevant herein, section 6662(a) imposes a
penalty equal to 20-percent of any underpayment of tax that is
due to a substantial understatement of income.  See sec. 6662(a)
and (b)(2).  An individual substantially understates his or her
income tax when the reported tax is understated by the greater of
10-percent of the tax required to be shown on the return or
$5,000.  Sec. 6662(d)(1)(A).  As this threshold computation is
dependent on our previous conclusions, we leave for the parties
to determine as part of the Rule 155 computation whether there
was a substantial understatement for 1996 and/or 1997.  Assuming

---

[9]  Respondent has satisfied his burden of production under
sec. 7491(c) with respect to the accuracy-related penalty under
sec. 6662(a) and (b)(2).  Sec. 7491(c); Rule 142(a); <u>Higbee v.
Commissioner</u>, 116 T.C. 438, 446-447 (2001).

that there was, we continue with our discussion of the accuracy-related penalty.

Tax is not understated to the extent that the treatment of the item related thereto is based on substantial authority or is adequately disclosed in the return or in a statement attached to the return, and there is a reasonable basis for the tax treatment of such item by the taxpayer. Sec. 6662(d)(2)(B). Further, no penalty shall be imposed if it is shown that there was a reasonable cause for the underpayment and the taxpayer acted in good faith with respect to the underpayment. Sec. 6664(c)(1).

Petitioner makes no argument with regard to substantial authority or adequate disclosure, and we think that no such argument can be persuasively made. Based on the record before us, we also conclude that petitioner failed to establish that there was reasonable cause for any portion of the understatements in this case or that she acted with the requisite good faith. Accordingly, we hold that petitioner is liable for accuracy-related penalties for 1996 and 1997 to the extent that the Rule 155 computation demonstrates an underpayment of tax in each of those years.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect our disposition of the disputed issues, as well as the parties' concessions,

<u>Decision will be entered</u>

<u>under Rule 155</u>.